IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | |
|---|---|
| IN RE: § <br> § CASE NO. 15-70104 <br> AMERICAN STANDARD ENERGY, § CASE NO. 15-70105 <br> CORP., *et al.*, § <br> § Chapter 11 <br> Jointly Administered Debtors. § <br> § (JOINTLY ADMINISTERED UNDER <br> § CASE NUMBER 15-70104) <br> § | |

**DECLARATION OF J. STEVEN PERSON IN
SUPPORT OF INITIAL MOTIONS IN THE DEBTORS' CHAPTER 11 CASES**

I, J. Steven Person, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I am the President of American Standard Energy, Corp. ("Subsidiary"), and the Chief Executive Officer of American Standard Energy Corp. ("Parent" and, together with the Subsidiary, the "Debtors" and each a "Debtor"). On August 3, 2015 (the "Petition Date"), each of the Debtors filed for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

2. I make this Declaration in support of certain initial Debtor motions in these cases (collectively known as the "Initial Motions"), which have been or are to be soon filed in these cases.[*] Specifically, this Declaration supports (a) Debtor's Emergency Ex-Parte Motion for Joint Administration (filed in each case) ("Joint Administration Motion"); (b) Debtors' Emergency Motion to Extend Time to File Schedules and Statements ("Extension Motion"); (c) Debtors' Emergency Motion for Order (i) Authorizing Continued Use of Existing Business Forms and

---

[*] This declaration is being filed in both bankruptcy cases.

NY1360540.3
222076-10001

Records; (ii) Authorizing Maintenance of Existing Bank Accounts; and (iii) Waiving Certain U.S. Trustee Requirements ("Motion to Maintain Bank Accounts and Related"); and (d) Debtors' Emergency Motion for an Order (i) Prohibiting Utility Companies From Altering or Discontinuing Service on Account of Prepetition Invoices, (ii) Approving Deposit Account as Adequate Assurance of Payment, and (iii) Establishing Procedures for Resolving Requests by Utility Companies for Additional Adequate Assurance of Payment ("Utility Motion"). The Debtors may reference this declaration from time to time in support of other motions and applications in the Debtors' cases as well.

## THE DEBTORS' STRUCTURE AND BUSINESS AND THE REASONS FOR FILING CHAPTER 11

3. The Debtors own rights to, acquire rights to, develop and produce reserves of oil and natural gas. These rights are obtained and held through leases and concessions in many instances. The Debtors also engage in exploration for oil and natural gas and conduct (generally through contractors or other third parties) drilling and extraction of oil and natural gas reserves. The Debtors sell oil and natural gas (again, generally through contractors or other third parties), and have in the past also sold property interests together with certain related undeveloped oil and natural gas rights to third parties. The properties in which the Debtors hold rights are located in West Texas and North Dakota.

4. One or both of the Debtors have indebtedness to unsecured creditors related to the business.

5. The Subsidiary is the borrower pursuant to the Amended and Restated Credit Agreement dated as of February 5, 2014 (together with the documents and instruments executed and delivered therewith, collectively, the "Credit Agreement") among the Subsidiary and Cortland Capital Market Services LLC (the "Agent") as agent for two lenders, PWCM Master

2

Fund Ltd. and Pentwater Equity Opportunities Master Fund Ltd. (collectively, the "Secured Creditor"). The Agent asserts that approximately $40 million was past due and outstanding under the Credit Agreement as of the Petition Date, owed by the Subsidiary (the "Secured Debt Facility"). The Secured Creditor asserts a security interest in and lien on substantially all assets of the Subsidiary, to secure the Secured Debt Facility.

6. The Parent wholly owns the Subsidiary. The Secured Creditor asserts that the debt under the Secured Debt Facility is guaranteed by the Parent and secured by a pledge of the Parent's equity holding in the Subsidiary, pursuant to the Credit Agreement.

7. The Parent has issued in the past shares of stock, as well as warrants and options, many of which are outstanding as of the Petition Date.

8. As companies that purchase and develop rights to undeveloped oil and gas and seek to develop and sell oil and gas for a profit, the Debtors are susceptible to the events in the global market for these products. The recent, continuing slump in the prices that sellers of oil and gas can achieve has damaged the Debtors' business. As a result of this financial stress, the Secured Creditor asserts that the Subsidiary has defaulted under the Secured Debt Facility. The Secured Creditor has taken steps to enforce its rights pursuant to such default.

9. The Debtors filed chapter 11 in order to halt foreclosure and enforcement actions against the assets of the Subsidiary by the Secured Creditor.

**THE DEBTORS' INTENTIONS IN CHAPTER 11**

10. The Debtors and management continue to evaluate the companies' options in chapter 11, and reserve all their rights in this regard. However, at this time, and in general, the Debtors intend to consummate a reorganization plan which would restructure and / or relieve all or part of the $40 million secured debt asserted by the Secured Creditor and otherwise reorganize

3

the financial affairs of the companies. The Debtors are further considering the sale of certain assets in bankruptcy to support the reorganization efforts.

11. In the meantime, however, in order to stabilize the Debtors' business in bankruptcy and continue operations with as little interruption as possible while the Debtors work towards their restructuring goals in these cases, the Debtors have brought or will soon bring the Initial Motions. Each of these requests, if granted by the Court, will support the Debtors' continued operation in chapter 11 and help towards achieving a successful outcome.

## JOINT ADMINISTRATION MOTION

12. The Debtors' intended restructuring in these cases will likely involve claims and / or interests asserted at both the Subsidiary and the Parent level. Moreover, both the Parent and Subsidiary are asserted secured obligors under the Secured Debt Facility. Further, the management of both Debtors consists of substantially the same individuals. In light of these and other factors, I anticipate that both Debtors will seek similar or closely-related relief from this Court during the bankruptcy cases. I also believe that most parties-in-interest, whether stakeholders in the Parent or the Subsidiary case, will desire to receive information about both companies during this chapter 11 process, rather than just the information concerning one or the other Debtor.

13. I am informed that joint administration of the Debtors' cases will greatly facilitate the filing of pleadings in these cases, helping the Debtors and other parties-in-interest to avoid unnecessary effort in filing duplicate (or nearly duplicate) pleadings in each case separately. Instead, I understand that joint administration will permit a filing in just one of the cases to address issues in either or both of the pending chapter 11's. Such a procedure would not only be more efficient, but will assist the Court and all parties-in-interest to achieve and maintain a

"global" view of matters involving both chapter 11 companies. Especially because I understand that joint administration does not affect the substantive rights of either of the Debtors, their estates or any other parties-in-interest, I can see only benefits – and likely savings – realized from this relief.

## EXTENSION MOTION

14. The time leading up to the filing of the Debtors' bankruptcy cases has been stressful for the Debtors' management and the operation of the business. While I understand that providing complete information on the Debtors, as required by bankruptcy law and rules, is important, and the Debtors' management desires to provide such information, I am also certain that stabilizing the Debtors' business in the immediate post-filing period will help preserve and maximize value of these estates.

15. For these reasons, I believe that the Court should grant the Debtors' Extension Motion. With extra time to prepare the required schedules and statements of financial affairs, the Debtors' management will not only have the best ability to assure the greatest possible accuracy and completeness of the information that is provided, but we will also have the additional "breathing room" to address any challenges to operations that the bankruptcy filings trigger. Thus, additional time will help us to preserve value in the Debtors.

16. Granting the Extension Motion will not, however, prejudice any creditors or other parties-in-interest. I understand that the additional time that the Debtors are requesting to file schedules and statements is typical of such requests, as often granted by this Court. In addition, I can assure the Court that the Debtors are prepared to respond to any appropriate information requests that the Debtors may receive from any parties-in-interest in the meantime, should there

be urgency to receive such information before it would become available in the Debtors' schedules and statements.

## MOTION TO MAINTAIN BANK ACCOUNTS AND RELATED

17. I understand that bankruptcy law often requires companies that file chapter 11 to modify their banking procedures as well as certain forms and records that they use in conducting their business. Generally, I understand that these requirements compel a chapter 11 debtor to make evident to all parties with whom it deals that it is in bankruptcy, and label its bank account title(s) accordingly.

18. Such requirements, if applied to the Debtors, would have a deleterious effect on the estates, potentially reducing value for all stakeholders. First, adhering to these standards would be costly for the Debtors' estates. To the extent such additional expense can be avoided, I believe that this measure would better preserve estate value.

19. Second, especially since the Debtors intend to continue operating their business in chapter 11, it would be counterproductive if parties dealing with the Debtors were needlessly alarmed by statements that the companies are in bankruptcy. To be clear, I do not believe that any of the *substantive* protections of bankruptcy law afforded to third parties that deal with the Debtors during the chapter 11 cases should be compromised. However, it is important that the Debtors not be required to label their bank accounts, forms and records as those of "debtors" or "debtors in possession," so as to avoid needlessly concerning parties with whom the Debtors do business.

20. The Debtors move on an "emergency" basis so that any relief that the Court may provide on this motion will be available to the Debtors from the outset of these cases. Any significant delay in receiving the relief requested in the Motion to Maintain Bank Accounts and

Related would make any subsequent provision of the relief moot, because the Debtors would have by then necessarily incurred the expense (and potential reputational damage) that I hope the Debtors can avoid.

21. I have read the Motion to Maintain Bank Accounts and Related and confirm that the facts set forth therein are true and accurate.

## UTILITY MOTION

22. I understand that bankruptcy law provides utilities with certain protections during a chapter 11 case which are in addition to those rights of other creditors and service providers. A failure to establish the parameters of these protections early in a bankruptcy case, I am told, can jeopardize the debtor's access to utility service.

23. The Debtors purchase telephone, internet, online and related services from vendors that I am told could be considered utilities for bankruptcy purposes. It would be very problematic for the continued operation of the Debtors' business if any of these services were cut off. For this reason, the Utility Motion requests the Court to fix the terms of any protection afforded to the telephone, internet, online and related service providers of the Debtors during the chapter 11 cases. The intention of the Utility Motion is to fulfill the Debtors' legal obligations to these service providers while at the same time avoiding any unpredicted, abrupt interruptions of their services which could severely damage the Debtors' business.

24. The Utility Motion should be considered on an emergency basis, since any delay – which might provide an opportunity for one or more of the Debtors' service providers to act capriciously and interrupt or reduce service – could cause irreparable damage to the estates. I believe it critical that the Debtors know from the very beginning of these cases the terms they

must fulfill in order to assure that their telephone, internet, online and related services continue uninterrupted.

25. I have read the Utility Motion and confirm that the facts set forth therein are true and accurate.

*[Remainder of this page intentionally left blank.]*

NY1360540.3
222076-10001

Dated: August 3, 2015

By: _____
J. Steven Person

10